Lourie, Circuit Judge, dissenting.
I respectfully dissent from the majority's decision upholding the eligibility of the claims. In my view, they are clearly abstract. In fact, they differ very little from the claims in Electric Power Group, LLC v. Alstom S.A. , 830 F.3d 1350, 1355 (Fed. Cir. 2016), where we found the claims to be abstract.
The majority opinion focuses on claim 1 of U.S. Patent 6,711,615 ("the '615 patent"), which recites:
1. A computer-automated method of hierarchical event monitoring and analysis within an enterprise network comprising:
deploying a plurality of network monitors in the enterprise network;
detecting, by the network monitors, suspicious network activity based on analysis of network traffic data selected from one or more of the following categories: {network packet data transfer commands, network packet data transfer errors, network packet data volume, network connection requests, network connection denials, error codes included in a network packet, network connection acknowledgements, and network packets indicative of well-known network-service protocols};
generating, by the monitors, reports of said suspicious activity; and
automatically receiving and integrating the reports of suspicious activity, by one or more hierarchical monitors.
Similarly, the claim we reviewed in Electric Power Group recited "[a] method of detecting events on an interconnected electric power grid in real time over a wide area and automatically analyzing the events on the interconnected electric power grid," with the method comprising eight *1313 steps, including "receiving data," "detecting and analyzing events in real time," "displaying the event analysis results and diagnoses of events," "accumulating and updating measurements," and "deriving a composite indicator of reliability." 830 F.3d at 1351-52.
While that claim was lengthy, with eight steps, it merely described selecting information by content or source for collection, analysis, and display. Id. at 1351. In finding the claim directed to an abstract idea, we reasoned that "collecting information, including when limited to particular content (which does not change its character as information)" was an abstract idea. Id. at 1353. Limiting the claim to a particular technological environment-power-grid monitoring-was insufficient to transform it into a patent-eligible application of the abstract idea at its core. Id. at 1354. The claim was rooted in computer technology only to the extent that the broadly-recited steps required a computer. At step two, we noted that the claim did not require an "inventive set of components or methods ... that would generate new data," and did not "invoke any assertedly inventive programming." Id. at 1355.
This case is hardly distinguishable from Electric Power Group. The claims in that case are said in the majority opinion to only be drawn to using computers as tools to solve a problem, rather than improving the functionality of computers and computer networks.
The claims here recite nothing more than deploying network monitors, detecting suspicious network activity, and generating and handling reports. The detecting of the suspicious activity is based on "analysis" of traffic data, but the claims add nothing concerning specific means for doing so. The claims only recite the moving of information. The computer is used as a tool, and no improvement in computer technology is shown or claimed. There is no specific technique described for improving computer network security.
I would find the claims directed to the abstract idea of monitoring network security and proceed to step two of Alice . As in Electric Power Group , however, "[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology ...." 830 F.3d at 1355. The claims recite "types of information and information sources," id. , but such selection of information by content or source does not provide an inventive concept. Id. The specification further makes clear that the claims only rely on generic computer components, including a computer, memory, processor, and mass storage device. See '615 patent, col. 14 ll. 50-57. Indeed, the specification even deems the relevant memory bus and peripheral bus "customary components." Id. col. 14 l. 55.
Finally, the majority opinion quotes from and paraphrases language from the specification that only recites results, not means for accomplishing them. See, e.g., Majority Op. at 1303-04. The claims as written, however, do not recite a specific way of enabling a computer to monitor network activity. As we noted in Electric Power Group , result-focused, functional claims that effectively cover any solution to an identified problem, like those at issue here, frequently run afoul of Alice. 830 F.3d at 1356.
Thus, I would find the claims to be directed to an abstract idea at Alice step one, without an inventive concept at step two, and reverse the district court's finding of eligibility. Because I would find the claims at issue to be ineligible, I would not reach the remaining issues in the case.